IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05CV49-MU

| | |
|---|---|
| CHUKWUEMEKA F. MBADIWE, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNION MEMORIAL REGIONAL MEDICAL ) | |
| CENTER, INC., CAROLINA HEALTHCARE ) | |
| SYSTEM, INC., JOHN W. ROBERTS, ROBERT ) | |
| AUSTIN, M.D., EDWARD BOWER, M.D., and ) | |
| ROBIN CONNELLEY, in their individual and ) | |
| official capacities, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court upon the Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint.[1]

The Plaintiff, a surgeon of Nigerian ancestry, alleges claims that arise out of medical staff review proceedings occurring between April and July 2004 in which the hospital's Medical Executive Committee ("MEC") restricted Plaintiff's clinical privileges after he perforated a patient's colon during a colonoscopy. Plaintiff alleges that Defendants acted in a racially discriminatory manner in violation of 42 U.S.C. §§ 1981 and 1985(3) and are guilty of intentional infliction of emotional distress and defamation. Defendants have moved to dismiss all Plaintiff's claims pursuant to Rule 12(b)(6) except for his claim under 42 U.S.C. § 1981 against Defendants Union Memorial Regional Medical Center, Inc. and Roberts.

---

[1] Plaintiff's Second Amended Complaint removes Carolina Healthcare System, Inc. as a Defendant and abandons a previously alleged Claim for Relief under 42 U.S.C. § 1983.

1

Plaintiff Mbadiwe became a member of the medical staff at Union Memorial Regional Medical Center, Inc. ("UMRMC ") in May of 2003. In March of 2004, while performing a colonoscopy, Mbadiwe perforated a patient's colon. Mbadiwe notified the Chairman of the UMRMC Credentials Committee of the mishap and agreed to schedule future colonoscopies with Dr. Bower, the Chief of Surgery at UMRMC. Plaintiff alleges that Defendant Roberts "summarily suspended" his privilege to perform endoscopic procedures, but that when Plaintiff challenged the suspension, a subcommittee of the UMRMC MEC lifted it. The decision to lift the suspension was then affirmed by the MEC on April 21, 2004.

Mbadiwe claims that on June 21, 2004, operating room staff refused to schedule a surgery for him pursuant to a memorandum from Defendant Roberts, which Plaintiff had not seen. On July 22, 2004, Plaintiff alleges severe restrictions were placed on his surgical privileges "by the actions of" Roberts, Austin and Bower. (Compl. ¶ 14). He claims that UMRMC based its decision to restrict his privileges on notes regarding his surgical skills and performance made by operating room staff members at the direction of Dr. Austin. Mbadiwe contends that white surgeons have experienced similar mishaps but have not had their privileges restricted.

In considering a motion to dismiss, the court must view the Complaint in the light most favorable to the Plaintiff, and accept as true all well-pleaded allegations. Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). Dismissal is proper only if it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**A. Section 1981 Claim**:

Plaintiff alleges that the actions of the Defendants in restricting his surgical privileges

were racially motivated and had the effect of denying him the right to make and enforce a contract, in violation of 42 U.S.C. § 1981. Defendant Connelley, a nurse, argues that she is entitled to a dismissal of this claim as against her because she had no supervisory authority over Plaintiff, a surgeon, nor could she participate in the deliberations or decision of the MEC to restrict Mbadiwe's surgical privileges.

Section 1981 does not does not create grounds for a cognizable claim against a co-worker. Hodges v. Washington Tennis Serv. Int'l, 870 F. Supp. 386, 387 (D.D.C. 1994). However, individuals may be liable under section 1981 when they "authorize, direct, or participate in" a discriminatory act. Manuel v. International Harvester Co., 502 F. Supp. 45, 50 (N.D.Ill. 1980). One must have "played some active role" in order to trigger liability. Carter v. O'Hare Hotel Investors, 1990 WL 36833, *6-7 (N.D.Ill. 1990). In Carter, for example, the court allowed a plaintiff to maintain a section 1981 claim against one manager who participated in the decision to fire her but granted summary judgment to a second manager where there was only "indirect evidence of [his] involvement." Id.

Plaintiff does not allege herein that Connelley, a nurse, played any role in the decision to restrict his privileges or that she had the authority to participate in that decision. At most, Plaintiff alleges that Connelley is a co-worker who provided information to a decision-making body. This is insufficient to state a claim against her under section 1981.

Individual defendants Austin and Bower also claim that they are entitled to a dismissal of Plaintiff's §1981 claim against them because, as members of the MEC and participants in the medical review process, they are immune from suit under North Carolina's Hospital Licensure Act, N.C.Gen.Stat. § 131E-75 et seq. Under this statute, "[a] member of a duly appointed

3

medical review committee who acts *without malice* or fraud shall not be subject to liability for damages in any civil action on account of any act, statement or proceeding undertaken, made or performed within the scope of the functions of the committee." N.C.Gen.Stat. §131E-95(a) (emphasis added). Plaintiff's Second Amended Complaint alleges that "[d]efendants' actions denying Plaintiff the right to make or enforce a contract were willful and malicious . . ." (Compl. ¶ 21). Thus, the Plaintiff has stated a claim against these Defendants.

**B. Section 1985(3) Claim:**

Section 1985(3) provides a cause of action where two or more persons conspire to interfere with an individual's civil rights. To prevail on such a claim, a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who were motivated by a specific class-based, invidiously discriminatory animus, to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. Buschi v. Kirven, 775 F.2d 1240, 1257 (4th Cir. 1985).

Defendants argue that Plaintiff's §1985(3) should be dismissed because (1) he has failed to allege any concrete facts to support his conclusory allegation that a conspiracy existed between the Defendants, and (2) under the intracorporate conspiracy doctrine, Plaintiff has failed to allege a conspiracy of two or more persons.

The Fourth Circuit applies a "relatively stringent standard for establishing section 1985 conspiracies." Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995). Under that strict standard, the Fourth Circuit "has rarely, if ever found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy." Id. Moreover, the Fourth Circuit has "specifically rejected

section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." Id.

Upon review of Plaintiff's Complaint, it appears to the court that Plaintiff has fallen far short of the Fourth Circuit's heightened pleading standard for § 1985 conspiracy claims. Plaintiff alleges no concrete facts in support of his conclusory allegations of a conspiracy among the Defendants.

In addition, even if Plaintiff had met the Fourth's Circuit's stringent pleading standard, his § 1985 conspiracy claim would still fail because of the intracorporate conspiracy doctrine. Under this doctrine, "it is the general rule that the acts of the agent are the acts of the corporation."[2] Buschi, 775 F.2d at 1251. Accordingly, "[s]ince a conspiracy requires two entities, logic dictates that it is impossible for a corporation to conspire with itself." Turner v. Randolph County, 912 F. Supp. 182, 186 (M.D.N.C. 1995). As the individual Defendants are all agents of UMRMC, the intracorporate conspiracy doctrine clearly applies. The only two exceptions to this doctrine are (1) where corporate agents had personal financial stakes in the alleged objective of the conspiracy, Id., and (2) where the corporate agents are alleged to have been acting outside the normal course of their corporate duties. Buschi, 775 F.2d at 1252-53.

Plaintiff attempts to place his claim within these exceptions. He argues that Defendant Connelley acted outside the scope of her employment by observing and taking notes on Plaintiff's behavior, and that Defendant Bower stood to benefit personally from restriction of Plaintiff's privileges. However, Plaintiff's allegations in the Complaint itself contradict his

---

[2] Application of the intracorporate conspiracy doctrine is not barred by the fact that the corporate agents are also being sued in their individual capacities. Buschi, 775 F.2d at 1252.

argument that Connelley was acting outside the scope of her employment. In paragraph 15 of the Complaint, Plaintiff alleges that Connelley and other members of the operating room staff acted in accordance with specific instructions from UMRMC and Defendant Austin. Specifically, Plaintiff alleges that Connelley recorded his conduct at the direction of her employer and the President of the Medical Staff. Thus, the conclusory statement that Connelley was acting outside the scope of her employment fails to establish this particular exception to the intracorporate conspiracy doctrine.

Plaintiff's allegation that Bower had a personal stake in the restriction of Plaintiff's privileges likewise fails to bring his claims outside the intracorporate conspiracy doctrine. Specifically, Plaintiff alleges that Bower stood to benefit from the restriction of Plaintiff's surgical privileges. In Oksanen v. Page Memorial Hosp., 945 F.2d 696 (4th Cir. 1991), the Fourth Circuit refused to apply the "personal stake" exception under very similar circumstances. In that case, a physician sued the hospital and various staff members after his privileges were revoked. The defendants raised the intracorporate conspiracy doctrine as a defense. One of the defendant physicians competed directly with the plaintiff but did not materially participate in the decision to restrict the plaintiff's privileges. He did, however, consult with the peer review committee that restricted the plaintiff's privileges. The Fourth Circuit held that the competing physician had insufficient control over the peer review process to trigger the "personal stake" exception, stating that when "decision-making authority . . .[is] dispersed among a number of individuals, the personal stake exception [to the intracorporate conspiracy doctrine] is inapplicable." Id. at 705-06.

The allegations in Plaintiff's Complaint again defeat his argument. He alleges only that

6

Bower wrote a letter to the MEC and consulted with the MEC. (Compl. ¶¶ 13, 21, 24, 30) Moreover, Plaintiff does not allege that Bower actually took part in the decision to restrict his privileges, but that Bower was on vacation when the decision was made and Bower merely consulted with Austin by telephone. (Compl. ¶ 30). Pursuant to Oksanen, the court finds that the "personal stake" exception to the intracorporate conspiracy doctrine is inapplicable here. Plaintiff's § 1985 claim is therefore barred.

### C. Intentional Infliction of Emotional Distress:

The court finds that Plaintiff's allegations in paragraphs 30 through 32 of the Second Amended Complaint fall far short of alleging the type of "extreme and outrageous conduct" required to state a claim under North Carolina law. Thus, this claim will be dismissed as against all Defendants.

### D. Defamation:

A claim for defamation requires that a plaintiff allege and prove that the defendant "made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." Smith-Price v. Charter Behavioral Health Sys., 164 N.C. App. 349, 355, 595 S.E.2d 778, 784 (2004). In a defamation suit, "[t]he words attributed to defendant [must] be alleged 'substantially' *in haec verba*, or with sufficient particularity to enable the court to determine whether the statement was defamatory." Stutts v. Duke Power Co., 47 N.C.App. 76, 83, 266 S.E.2d 861, 866 (1980). Moreover, it is essential a plaintiff allege when and where the allegedly defamatory statements were made. Id. In Plaintiff's Complaint, he alleges merely that "[d]efendants stated both orally and in writing and

in complaints to Medical Executive Committee and other Committees and individuals that plaintiff was engaged in dishonesty tantamount to defrauding patients." (Compl. ¶ 38). This allegation is wholly inadequate to state a claim for defamation.

Plaintiff also alleges in his Second Amended Complaint that Defendant Connelley wrote a letter on June 25, 2004 that stated in part: "[Mbadiwe's] patients do not understand that another physician is actually providing the care. *My staff and I feel* that this is dishonest. Patients are referred to him by their medical doctor and have no idea that he has restricted privileges." (Emphasis added) (Compl. ¶ 36). This statement cannot as a matter of law provide the basis for a defamation claim. The statement is not actionable because it is one of opinion and is not "provable as false." Milkovich v. Lorain Journal Co., 497 U.S. 1, 19 (1990).

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Plaintiff's Third, Fourth, and Fifth Claims for Relief is hereby GRANTED; Defendant Connelly's Motion to Dismiss Plaintiff's First Claim for Relief against her is hereby GRANTED; and Defendants Austin and Bower's Motion to Dismiss Plaintiff's First Claim for Relief against them is hereby DENIED. Thus, the only remaining claim is Plaintiff's First Claim for Relief as against Defendants UMRMC, Roberts, Austin, and Bowers.

**Signed: November 28, 2005**

*Graham C. Mullen*
Graham C. Mullen
Chief United States District Judge